OPINION
{¶ 1} Defendant-appellant, Nolan C. Martin, Jr. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, whereby a jury convicted appellant of robbery. For the following reasons, we affirm.
 {¶ 2} The grand jury returned a 12-count indictment against appellant, alleging that appellant had committed: aggravated burglary with specification, a first-degree felony, in violation of R.C. 2911.11; aggravated robbery with specification, a first-degree *Page 2 
felony, in violation of R.C. 2911.01; robbery with specification, a second-degree felony, in violation of R.C. 2911.02; robbery with specification, a third-degree felony, in violation of R.C. 2911.02; kidnapping with specification, a first-degree felony, in violation of R.C. 2905.01 (four counts); felonious assault with specification, a second-degree felony, in violation of R.C. 2903.11 (two counts); intimidation of a crime victim or witness, a third-degree felony, in violation of R.C. 2921.04; and having a weapon while under disability, a third-degree felony, in violation of R.C. 2923.13. Plaintiff-appellee, the State of Ohio ("appellee"), dismissed the felonious assault and intimidation counts prior to trial, and appellant waived his right to a jury trial on the weapon under disability count. As to the remaining nine counts, a jury trial commenced on May 17, 2007.
 {¶ 3} Columbus Police Officer Brian Blind testified that he responded to a police dispatch on the morning of February 9, 2007, concerning a call that a person with a gun was in the area. Officer Blind and his partner arrived at an address on East Mound Street to find a woman, later identified as Amanda Smalley, who was very upset. The officers took pictures of Smalley, and these pictures depicted an abrasion and scratches near Smalley's ear, scratches and bruises on her left cheek, scratches on her chest, and a rip on her pant leg. On cross-examination, Officer Blind stated that he did not know when the injuries occurred or when Smalley's pants were ripped.
 {¶ 4} Smalley testified that she first met appellant in October 2006, and they began dating shortly thereafter. Smalley owned a home on Binbrook Avenue. However, she moved in with James Stai, Pamela Sowers, and Robert Reder at an apartment on East Mound Street in December 2006, at which time Smalley was no longer dating appellant or maintaining contact with him. In early January 2007, Smalley *Page 3 
and appellant re-established contact as friends, and appellant stayed with Smalley for a few days at the East Mound Street apartment. According to Smalley, she wanted appellant to return to his home, he did not want to go, and they argued. Between mid-January and February 9, 2007, appellant and Smalley had no contact.
 {¶ 5} Smalley testified that, on the morning of February 9, she awoke to appellant tapping her on the forehead with a gun. A man she did not know was standing in the front doorway. Appellant was acting aggressively, demanding money from Smalley. She stated:
 He gets real mad when I tell him I don't have no money. I don't have anything. And he starts snatching on me, smacking me, pushing me.
 At the time he pushed me, he snatched me off the couch, was throwing me around, snatched my coat off of me, and made me go back into the back bedroom.
(Tr. at 126.)
 {¶ 6} Smalley also testified that appellant threatened to kill her if she did not give him all of her money. After appellant or the other man found Smalley's purse, appellant accused her of lying to him and smacked her again. Appellant also choked her, threw her money on the floor, made her pick it up, and gave some of the money back to her. While all of this was occurring between Smalley and appellant, the other man kept the three other occupants of the apartment (Stai, Sowers, and Reder) "seated at the table and said if they were to move that they were going to pistol-whip them." (Tr. at 129.) The whole event lasted about 30 minutes. Thereafter, Smalley and Sowers called the police. *Page 4 
 {¶ 7} At trial, Smalley identified the photographs the police officers took of her injuries, which did not require medical treatment. She stated that she had had $900, appellant had stolen $700 from her, and he had returned $200 to her.
 {¶ 8} Stai testified that he responded to a knock on the apartment building door on the morning of February 9, 2007. A man he did not know was at the door and asked for Smalley. Stai responded that Smalley was not there. Appellant then came around the corner with a gun in his hand. According to Stai, appellant "said, `I'm going to kill everybody. Kill you, whatever. I know she's in there. Why are you doing this to me?'" (Tr. at 171.) Appellant and the other man pushed in the door and went upstairs to the apartment. As he went up the stairs, appellant put a clip in the gun. According to Stai, appellant and the other man found him, Sowers, and Reder in the apartment, made them sit in the dining room, and threatened them. Then appellant "proceeded to just beat the hell out of [Smalley]. I mean, I mean, threw her around like a rag doll." (Tr. at 173.) Appellant also hit Stai in the head with his open hand and with the gun. After getting the money from Smalley, appellant and the other man left. Stai said that the neighbors called the police.
 {¶ 9} Sowers also testified that the man with appellant made her, Stai, and Reder sit at the table and threatened them. She stated that appellant woke Smalley up by tapping her on the head with a gun, "and he started yelling at her and screaming at her and grabbing her up, slung her around and stuff, wanting her money, wanting her purse, and took her cell phone." (Tr. at 195.) She said the whole incident lasted about 15 or 20 minutes. *Page 5 
 {¶ 10} Following the presentation of this evidence, and the admission of exhibits, appellee rested. Appellant presented no witnesses and one exhibit. The state thereafter sought to dismiss one kidnapping count and one robbery count, leaving seven counts for the jury's consideration.
 {¶ 11} During its deliberations, the jury submitted several questions to the court and, after several hours of deliberation, indicated that it had not been able to reach a verdict on all of the charges. The court instructed them further, and they continued to deliberate. Thereafter, however, they again indicated to the court that they could not reach a unanimous verdict on all of the charges. The jury submitted one verdict form, which indicated that they had found appellant guilty of robbery. They could not reach a verdict on the other six counts of the indictment. The court concluded that there was no probability that the jury would agree on those charges and declared a mistrial as to those counts. The state ultimately decided not to retry appellant on those six counts.
 {¶ 12} As noted previously, appellant waived his right to a jury trial on the charge of having a weapon under disability. After giving a detailed explanation of the evidence related to that charge, the court found appellant not guilty of that charge.
 {¶ 13} Appellant filed a timely appeal from his conviction for robbery, and as to that single conviction he raises the following assignment of error:
 [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 14} In determining whether a verdict is against the manifest weight of the evidence, we sit as a "thirteenth juror." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. We review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine *Page 6 
"`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'"Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v.Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quotingState v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 15} Here, appellant notes the jury's inability to agree on the other charges pending against appellant and speculates that jurors "must have extracted some evidence as probative as to Robbery as a felony of the second degree, and disregarded that same evidence as to kidnapping and the other charges upon which they could not agree." We refuse to engage in such speculation, however. Under a manifest weight challenge, we must determine whether the jury clearly lost its way and wrongly convicted appellant.
 {¶ 16} Under R.C. 2911.02(A), no person, while attempting or committing a "theft offense," shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control;
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; *Page 7 
 (3) Use or threaten the immediate use of force against another.
 {¶ 17} Any person who commits the acts identified in (1) and (2) is guilty of second-degree robbery. Any person who commits the acts identified in (3) is guilty of third-degree robbery.
 {¶ 18} Based on our review of the record, we conclude that the jury did not lose its way when it convicted appellant of second-degree robbery. The evidence clearly established that appellant had a gun, and Stai testified that appellant loaded the gun on his way into the apartment. Therefore, appellant had a deadly weapon.
 {¶ 19} Second, the evidence established that appellant inflicted physical harm on Smalley. Smalley, Stai, and Sowers all testified that appellant repeatedly hit and shoved Smalley. The photographs established that Smalley had injuries to her head, face, and chest, and the presence of these injuries corroborated the witnesses' accounts of appellant's actions.
 {¶ 20} Third, appellant brandished the gun and inflicted this harm while committing a theft offense. According to Smalley, Stai, and Sowers, appellant repeatedly demanded money from Smalley and took cash from her. Smalley's testimony that appellant took $700 from her was consistent with her statement to police.
 {¶ 21} Further, we agree with appellee that the jury's failure to reach a verdict on the other counts against appellant has no bearing on the verdict they did reach. Consistency among verdicts on several counts of an indictment is unnecessary, even where a defendant is convicted on one or more counts and acquitted on others. State v. Gale, Franklin App. No. 05AP-708, 2006-Ohio-1523, at ¶ 13. We view each count of *Page 8 
a multi-count indictment independently, and inconsistent verdicts on different counts do not justify reversing a guilty verdict on appeal. Id.
 {¶ 22} For these reasons, we conclude that the jury's verdict was not against the weight of the evidence, and we overrule appellant's assignment of error. Accordingly, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and McGRATH, JJ., concur. *Page 1